IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| RICHARD LEON GOYETTE | § | |
| | § | |
| v. | § | 2:10-CV-037 |
| | § | |
| UNITED STATES OF AMERICA | § | |

**REPORT AND RECOMMENDATION TO DENY MOTION
TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Defendant RICHARD LEON GOYETTE has filed a Motion to Vacate, Set Aside, or Correct

Sentence Pursuant to 28 U.S.C. § 2255.  For the reasons hereinafter expressed, the undersigned

United States Magistrate Judge is of the opinion defendant is entitled to no relief and recommends

the Motion to Vacate, Set Aside, or Correct Sentence be DENIED.

I.
FACTUAL AND PROCEDURAL BACKGROUND

In October 2008, defendant mailed a total of sixty-five letters to various branches of Chase

Bank, the United States Office of Thrift Supervision, the Federal Deposit Insurance Corporation,

and JP Morgan Chase & Company.  *United States v. Goyette*, No. 2:09-CR-11, "Factual Resume,"

doc. 20, filed Mar. 16, 2009, pg. 2.  Sixty-four of the letters "contained an unidentified white

powder, along with a threat that the person breathing the powder . . . would die within [ten] days."

*Id.*  The sixty-fifth letter, sent to JP Morgan Chase & Company, threatened a "McVeighing of your

corporate headquarters within six months."  *Id.*  Following an investigation, defendant Goyette was

indicted on sixty-five counts of making threats in violation of 18 U.S.C. § 844(e) and 1038(a)(1).

*Id.*, "Indictment," doc. 12, filed Feb. 24, 2009.

On March 16, 2009, defendant pled guilty to two counts of the indictment, *i.e.* (i) to one count of using interstate commerce to convey a threat to kill, injure, intimidate people and damage and destroy a building, vehicle, and real property by means of fire and explosives and (ii) to one count of conveying false and misleading information by sending, to a financial institution, a letter which contained an unknown white powder and stating the person breathing the powder would die within ten days. *Id.*, "Plea Agreement," doc. 18, filed Mar. 16, 2009.  Goyette was sentenced to a term of forty-six months in prison on each count, sentences to run concurrently, to be followed by three years of supervised release on each count, also to run concurrently. *Id.*, "Amended Judgment," doc. 43, entered Jan. 12, 2010.  The Court ordered defendant to pay $87,734.40 in restitution based on claims submitted by various agencies providing emergency response services in answering emergency calls prompted by defendant's letters. *Id.*, pgs. 5-7.  In October 2009, defendant, acting *pro se*, appealed the conviction.  The Fifth Circuit ultimately dismissed the appeal as untimely. *Id.*, Order Granting Motion to Dismiss, doc. 75, signed June 4, 2010.  While the direct appeal was pending, defendant filed the instant 28 U.S.C. § 2255 motion.  This Court held the section 2255 motion in abeyance while the direct appeal was pending, but reopened the case when the direct appeal was dismissed.  Once the case was reopened, the Court appointed defendant an attorney and, on October 7, 2010, conducted an evidentiary hearing, at which defendant Goyette, Goyette's trial attorney, an agent with the Federal Bureau of Investigation (FBI), and the Assistant United States Attorney who prosecuted the case testified.

## II.
## DEFENDANT'S ALLEGATIONS

In support of his contention that his conviction and sentence were imposed in violation of the Constitution or laws of the United States, defendant Goyette contended, in the motion to vacate,

in five separate grounds, that he received ineffective assistance of counsel regarding the following:

1.   the plea agreement, in that counsel failed to convey a counter-offer to the original plea agreement, as defendant instructed;

2.   the ordered restitution, as detailed in section III.B.1, below;

3.   the upward departure, in that counsel failed to challenge it at sentencing;

4.   the imposition of a special condition of release, in that counsel failed to challenge it at sentencing; and

5.   the right to appeal, in that counsel misinformed defendant of his right to an appeal.

III.
REVIEW OF CLAIMS

*A.  Waived Claims*

In his first point of error, defendant complains his trial attorney failed to renegotiate the plea agreement, as defendant directed.  In his third point of error, defendant complains of his attorney's failure to object to the Court's imposition of a three-level upward departure from the range recommended in the Sentencing Guidelines.  In his fourth point of error, defendant complains his attorney failed to object to the Court's imposition of special conditions of release requiring defendant to participate in a mental health program upon his release from custody.

At the October 7, 2010 evidentiary hearing, defendant expressly waived the claims set forth above, i.e. the first, third, and fourth points presented in the 2255 motion.  Waiver of these claims was based upon the advice of defendant's attorney and upon defendant's own determination and volition.  The Court verified defendant Goyette's decision to waive these three points of error was knowing and voluntary.  Since defendant has waived these claims, the Court will not further address the merits of them.

## B. Remaining Ineffective Assistance of Counsel Claims

Defendant did not waive his second and fifth points of error, which involve claims of ineffective assistance of counsel regarding restitution and appeal.  In *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-part test for analyzing ineffective assistance of counsel claims.  The *Strickland* test, which applies to ineffective assistance of counsel claims in guilty plea cases, requires a prisoner to demonstrate defense counsel's performance was both deficient and prejudicial.  *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

An attorney's performance is considered deficient if the attorney made errors so serious he or she was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment to the United States Constitution.  *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2064.  That is, counsel's performance must have fallen below the standards of reasonably competent representation as determined by the norms of the profession.   A reviewing court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance.  *Id.* at 689, 104 S. Ct. at 2065.

In the context of a guilty plea, a defendant can satisfy the prejudice prong of *Strickland* by demonstrating that but for counsel's deficient performance, a reasonable probability exists that the defendant would not have pled guilty, but would have insisted on a trial.  *Hill*, 474 U.S. at 58, 106 S.Ct. at 370.  Similarly, in the context of a procedurally defaulted appeal, a defendant can satisfy the prejudice prong by demonstrating that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, [defendant] would have timely appealed." *Roe v. Flores-Ortega*, 528 U.S. 470, 477, 120 S.Ct. 1029, 1035, 145 L.Ed.2d 985 (2000).

1.  Restitution

In his second point of error, defendant challenges the $87,734.40 in restitution ordered by the Court.  Title 28 U.S.C. section 2255 provides, "[a] prisoner in custody under sentence of a [federal] court *claiming the right to be released* . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255 (emphasis added).  By the statute's plain language, it is meant to provide relief only to those challenging their custody.  "A monetary fine is not a sufficient restraint on liberty to meet the 'in custody' requirement for [section] 2255 purposes."  *United States v. Segler*, 37 F.3d 1131, 1137 (5th Cir. 1994).

Based on this rationale, the Fifth Circuit has established, "when a prisoner asserts an ineffective assistance of counsel claim *under [section] 2255*, he must satisfy *Strickland's* prejudice requirement by showing harm that relates to his custody."  *Id.* (emphasis in original).  If a prisoner's claim relates only to the imposition of a fine, it falls outside the scope of a section 2255 motion.  *Id.* The Fifth Circuit has extended this rule to encompass restitution, reasoning "if a fine does not relate to unlawful custody, then neither does restitution."  *United States v. Walker*, No. 95-10270, 1996 WL 60750, at *3 (5th Cir. 1996) (unpublished)*; United States v. Hatten*, 167 F.3d 884, 887 (5th Cir. 1999) (holding "complaints concerning restitution may not be addressed in § 2255 proceedings").

a.  Are Defendant's Claims Cognizable?

While it is obvious that Goyette is dissatisfied with and challenges his trial attorney's performance in relation to the restitution ordered by the Court, the theory of his challenge has not been consistent, and this inconsistency has made analysis of Goyette's claim more difficult.  In his pre-hearing written pleadings, defendant contended he would not have pled guilty if his attorney would have advised him he could owe restitution on all charged counts, not simply the counts to

which he pled guilty.  At the evidentiary hearing, however, Goyette, for the first time, claimed counsel's representation was ineffective because counsel failed to verify the restitution amounts listed in the Presentence Report and relied upon by the Court when ordering restitution.  More importantly, he also indicated, at the evidentiary hearing, he no longer sought 2255 relief but instead was asking the Court to construe this ground of error as the basis for a petition for a Writ of Coram Nobis, which the Court denied.  In any event, because defendant has never expressly waived this ground, the Court will address each of Goyette's two different contentions in turn.

As set forth above, defendant Goyette first contended he *would not have pled guilty* if his attorney would have told him he would owe restitution on all of the counts, and not simply the two counts to which he pled guilty.  *Goyette*, No. 2:10-CV-37, "Motion to Reconsider Order Setting Hearing," doc. 47, filed by defendant Sept. 22, 2010, pg. 2 (stating "[Trial counsel's] erroneous information regarding restitution was one of two pivotal factors that lured Goyette into formally accepting the plea on March 16th 2009, rather than decline the plea.").  By this argument Goyette attempts to tie his conviction *and his custody* directly to the ineffective assistance of counsel claim regarding restitution, i.e. he would not have entered into the plea agreement at all but for the ineffective assistance of his attorney regarding restitution.  So, while existing case law may hold that in general a challenge to restitution is not cognizable in a 28 U.S.C. § 2255 motion, *see Segler*, 37 F.3d at 1137, such is not the argument defendant Goyette originally made in the motion to vacate.  Rather, the argument defendant presented seemed unique because it linked the ineffective assistance of counsel claim (regarding restitution) directly to defendant's custody.  *See id.*  This resulted in Goyette's argument being distinguishable from the case law cited above, and it is not as clear that

such an argument is barred by that case law.[1]

The Government's position is that there is a case instructive on this unique issue.  In *United States v. Walker*, the Fifth Circuit stated.

> Faced with the *Strickland* standard, defendants, to prevail, must establish that the ineffective assistance prejudiced them in such a way so as to create a harm relating to their custody.  Because the failure of a defendant's attorney to challenge a fine does not relate to his incarceration, such claims are improper under section 2255.

*Walker*, 1996 WL 60750, at *3.  Defendant Goyette, in reply, points out that if federal prisoners are forbidden *a priori* from challenging any aspect of a restitution order in a section 2255 motion, then such prisoners appear to have "no adequate legal remedy if, as a result of the denial of their constitutional right to effective assistance of counsel, they are subjected to unlawful or unjust restitution or fine[s]."  *Goyette*, No. 2:10-CV-37, "Petitioner Goyette's Supplemental Brief," doc. 70, filed Oct. 21, 2010, pg. 6.

The undersigned finds that *Walker* does not address situations where defense counsel was alleged to have given incorrect advice to his client regarding restitution, and where the client claims that advice impacted the defendant's decision to plead guilty and/or whether the plea was knowingly made.  *See Walker*, 1996 WL 60750, at *3.  In any event, rather than determine what the Fifth Circuit's intent was in *Walker*, an unpublished, sixteen-year-old case, never cited by the Fifth Circuit since its issuance, the Court assumes the language in *Walker* was not designed to be a wholesale bar to any claim involving restitution in a section 2255 case.  The Court construes the unclear Fifth Circuit case law in favor of Goyette and finds his claim *as it was initially presented* to be cognizable

---

[1]  As discussed below, defendant changed this argument at the evidentiary hearing into an argument that more closely resembles the incognizable claims barred by 28 U.S.C. § 2255 and *Segler*, 37 F.3d at 1137.  For the sake of thoroughness, the Court discusses both the written representations and testimony of defendant in section III.B.1.c, *infra*.  For the purposes of this section, the Court's determination applies only to the statements made in defendant's pre-hearing, written pleadings.

in a section 2255 motion.  The merits of this argument are addressed in section B.1.b below.

Goyette's second, or newer, argument relates to his trial attorney's performance, specifically the court-ordered restitution and his attorney's failure to verify the restitution amounts.  At the evidentiary hearing, Goyette's trial attorney admitted he did not independently verify the restitution amounts included in the Presentence Report but rather relied upon the restitution computations performed by United States Pretrial and Probation Services (USPPS) and the FBI, even after Goyette specifically requested documentation to verify the restitution amounts.  The post-evidentiary hearing Stipulation entered into by Goyette's and the government's attorneys states the USPPS officer assigned to the case did not recall Goyette's trial attorney ever requesting to meet with the officer to review the documents supporting the restitution calculations.  The USPPS officer's notes do not indicate the officer and Goyette's trial attorney ever had any phone conversation or meetings, although the two did send e-mails to one another.[2]  "Stipulation," doc. 71, filed Oct. 25, 2010, pg. 2.  At the evidentiary hearing, though, Goyette admitted his attorney's failure to verify the restitution amounts *would not have impacted whether he would have pled guilty*, he simply would have more

---

[2]  The U.S. Probation officer who was assigned the PSR did not testify at the evidentiary hearing.  The attorney requested by Goyette and appointed by the Court entered into the Stipulation of Ms. Dobbe's testimony with the attorney for the Government.  Goyette was unsatisfied with the Stipulation and indicated a supplemental evidentiary hearing where he could question Ms. Dobbe was necessary.  "Response to Order Terminating Representation," doc. 78, filed Nov. 29, 2010.  Toward the beginning of this case, Goyette originally represented that, first, he sought to question Ms. Dobbe regarding the legitimacy and accuracy of the amounts submitted for restitution.  "Motion to Refile Discovery Request Under Rule 6(b) Governing U.S.C.S. Title 28 Section 2255 Proceedings," doc. 34, filed Aug. 25, 2010, pgs. 2-3.  The Stipulation established "[Ms. Dobbe] reviewed the back-up documentation submitted by each entity, supporting the requested amount of reimbursement for costs incurred."  "Stipulation, " doc. 71, filed Oct. 25, 2010, pg. 1.  The FBI Agent, Agent Whitworth, was the person who originally gathered and reviewed the documentation referred to by Ms. Dobbe.  Agent Whitworth did testify at the evidentiary hearing as to the validity of the restitution documents.  Goyette additionally indicated he wanted to question Ms. Dobbe regarding whether trial counsel did as Goyette instructed and independently verified the restitution amounts.  "Motion to Refile Discovery Request Under Rule 6(b) Governing U.S.C.S. Title 28 Section 2255 Proceedings," doc. 34, filed Aug. 25, 2010, pgs. 2-3.  The Stipulation set forth that Goyette's trial attorney did not ever request the restitution documentation from Ms. Dobbe for review.  "Stipulation, " doc. 71, filed Oct. 25, 2010, pg. 2.  Because the Stipulation adequately covered the areas on which Goyette sought discovery, no additional evidentiary hearing was warranted.

confidence in the amount of restitution ordered.  This admission is very significant in that while Goyette remains suspicious of some of the restitution claims submitted by emergency response organizations, the legitimacy of the claims did not affect his plea and consequently did not impact his custody.

In addition, this claim as presented by Goyette at the evidentiary hearing is not part of the motion pending before the Court because it was not made in the section 2255 motion itself.  It was presented verbally for the first time at the evidentiary hearing and has never been presented in a motion to amend the section 2255 motion.  Moreover, considering defendant's testimony, the failure of Goyette's attorney to verify restitution calculations does not relate to Goyette's custody.  The undersigned finds this newer argument is not cognizable in a section 2255 motion.  *See Hatten*, 167 F.3d at 887; *Segler*, 37 F.3d at 1137.

Additionally, with respect to Goyette's newer argument, he has not shown prejudice.  *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2064.  Specifically, Goyette has not shown he was prejudiced because of his testimony that he would have pled guilty whether his attorney verified the restitution amounts or not.  *See Hill*, 474 U.S. at 58, 106 S.Ct. at 370.  He also has not shown prejudice because he has not proven any of the restitution amounts he was ordered to pay were inaccurate or overstated the costs incurred by the emergency response organizations in reacting to the situations created by defendant's actions.  *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2064. To the contrary, the FBI agent who initially reviewed the claims from the emergency responders and created the spreadsheet of claims found in the PSR testified at the evidentiary hearing that the spreadsheet was an accurate compilation of the claims.  Consequently, defendant's second challenge, developed during the evidentiary hearing, to his attorney's performance as it relates to restitution

513 PageID

is not cognizable, and, in the alternative, is meritless.

b.  Was Defendant's Trial Attorney Deficient in His Representation?

Because, as set forth supra, the undersigned has concluded defendant's claim, raised in his pre-hearing pleadings, that he would not have pled guilty but for his attorney's allegedly deficient advice regarding restitution is cognizable in these 28 U.S.C. § 2255 proceedings, the Court will address the merits of that argument notwithstanding Goyette's evidentiary hearing testimony. Regarding the first *Strickland* prong of deficient performance, defendant initially argued his attorney was deficient for failing to accurately inform Goyette of the consequences of the plea agreement. Defendant states his attorney told him he could only be liable for restitution on the two counts to which he pled guilty.  If this alleged advice had been correct, the restitution would have totaled less than $500.00.  *Id.*, Motion to Vacate, doc. 1, filed Feb. 8, 2010, Exhibit B.  In fact, by the Trial Court's order defendant was held liable for twenty-seven restitution claims, which totaled more than $87,000.00.  *Goyette*, No. 2:09-CR-11, "Amended Judgment," doc. 29, filed Sept. 21, 2009, pgs. 5-8.

Goyette's trial attorney testified at the evidentiary hearing that he did not recall telling Goyette restitution was limited to the claims in the plea agreement and that he personally was not under the impression restitution would be limited to the two counts to which Goyette pled guilty. Defendant Goyette, in response, testified the attorney advised him restitution liability was limited to the two charges to which he pled guilty, only one of which would require any restitution payment. The documentary evidence does not support defendant Goyette's position, but does support his trial attorney's position.

Paragraph three of the plea agreement signed by defendant and his attorney states:

> 3.      Sentence:      The maximum penalties the Court can impose include:
> . . .
>
> e.       . . . restitution arising from all relevant conduct, not limited to that arising from the offense of conviction alone;
> . . .
>
> g.       reimbursement to any state or local government, or private not-for-profit organization that provides fire or rescue service including expenses incident to any emergency or investigative response to that conduct, for those expenses.

*Goyette*, No. 2:09-CR-11, "Plea Agreement," doc. 18, filed Mar. 16, 2006, pg. 2.  When confronted with this language from the plea agreement at the evidentiary hearing, Goyette explained he thought the two paragraphs (e and g) pertained only to the two counts to which he pled guilty.

Goyette's hearing testimony and his explanation are not credible.  First, the plea agreement, signed by him, contradicts his argument.  Beyond the plea agreement, defendant offers nothing more than his post-conviction testimony in support of his contention.  His testimony alone is insufficient to overcome the strong presumption that his trial attorney gave correct advice regarding the law.  This is especially so when defendant's testimony is contradicted not only by the trial attorney but by the clear language of the plea agreement signed by the defendant and acknowledged in open court.  *See id.*  Defendant Goyette has failed to satisfy the first *Strickland* prong of deficient performance by his attorney.

c.  Was any Deficient Performance Prejudicial?

Even if Goyette could demonstrate deficient performance by the trial attorney, he cannot prove he suffered any prejudice as a result of that performance.  At the evidentiary hearing, Goyette testified he never intended to take the case to trial and does not want the plea agreement revoked.  Instead, he wants the judgment reformed as to restitution if, upon verification, the restitution

calculations are incorrect.  To be clear, at the evidentiary hearing, Goyette's revised argument was *not* that he would have refused to sign the plea agreement if he understood the Court could order restitution for offenses to which he did not pled guilty.  Instead, Goyette's argument at the evidentiary hearing was that he still would have signed the plea agreement but simply would have been more confident the restitution amounts were accurate had they been verified.

Goyette's pleadings and his testimony are incongruous.  Defendant's credibility is called into question when he makes a representation in his sworn, written pleadings that he later contradicts by his sworn testimony.  Either Goyette would not have entered into the plea agreement but for his attorney's advice (as stated in the written pleadings) or he would have entered into the agreement regardless of his attorney's advice (as stated in defendant's testimony)—both cannot be true.

In any event, as discussed in section III.B.1.a above, the initial presentation of the restitution issue in the written pleadings may have presented a cognizable 2255 issue, which, in fact, has been addressed (and determined to be meritless because defendant failed to show deficient performance, as discussed in section III.B.1.b).  Goyette's revised argument, however, which is that he still would have entered into the plea agreement even if his attorney had given inaccurate advice on the restitution issue, is not cognizable.  *See Segler*, 37 F.3d at 1137.  The relief this Court could give Goyette if it found his claims persuasive would be to return him to the position he was in before he entered into the plea agreement, i.e. facing a sixty-five count indictment with no guarantee the government would again be willing to offer the same plea agreement.  *See United States v. Guerra*, 94 F.3d 989, 995 (5th Cir. 1996) (indicating a court may, in granting section 2255 relief, vacate the judgment, in which event the original guilty plea become void); *United States v. Dunham*, 501 F.2d 80, 89 (5th Cir. 1974) (stating if a court vacates judgment in a section 2255 action, the government

must "return to Square One and recommence its effort *ab initio*"). Defendant testified he does not want to be in such a position. Instead, defendant wants the Court to reform the judgment as to restitution. The Court does not have the jurisdiction to take such action in a 28 U.S.C. § 2255 proceeding. *See Hatten*, 167 F.3d at 886-87.

Additionally, defendant Goyette has failed to show any prejudice because he has not provided any facts and/or evidence, other than his own speculation, to support his contention that the amount of restitution is incorrect. Having failed to meet the requirements of *Strickland*, defendant's second ground of error (as stated in the written pleadings) should be denied. To the extent defendant's testimony at the evidentiary hearing changed the substance of the defendant's second argument, that argument as revised is not cognizable.

## 2. Appeal

### a. Ineffective Assistance of Counsel

In his fifth point of error, defendant avers that not only did his attorney fail to inform him of his right to appeal but the attorney told him he had no right to appeal. The Court notes Goyette did not present as a separate ground for relief the failure of the Court to advise him of his right to appeal.

The Supreme Court has long held "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Flores-Ortega*, 528 U.S. at 477, 120 S.Ct. at 1035. Even if an appeal would not have any merit, an attorney's failure to file a requested notice of appeal is *per se* ineffective assistance of counsel. *Id.*, 120 S.Ct. at 1035. A prisoner's late *pro se* notice of appeal demonstrates a prisoner's intention to appeal a court's decision. *United States v. Heckler*, No. 04-10545, 2006 WL 278543, at *1 (5th Cir.

Feb. 3, 2006).  When a defendant was denied assistance of counsel on appeal, the reviewing court, upon a section 2255 motion, may order an out-of-time appeal.  *United States v. West*, 240 F.3d 456, 459 (5th Cir. 2001).  In order to demonstrate ineffective assistance of counsel, however, a defendant "has the burden to prove ineffectiveness by a preponderance of the evidence."  *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000).

At the October 7, 2010 evidentiary hearing, Goyette testified that on the night before and on the day of sentencing he asked his attorney about the possibility of an appeal regarding the restitution, specifically, the four new restitution claims Goyette says he learned of on the night before sentencing.  According to Goyette, the attorney on both occasions told him an appeal was not possible because there was no right to appeal in plea bargain cases.  Goyette then claims he became aware of his right to appeal in late July or early August of 2009.  Motion to Vacate, doc. 1, filed Feb. 8, 2010, pg. 15.

Defendant's trial attorney testified at the evidentiary hearing and stated he never told defendant he could not file an appeal.  At the evidentiary hearing, the following exchange occurred between Goyette's counsel appointed for the hearing and the attorney he had retained at the trial level:

> Q.     Now, did you tell Mr. Goyette that he would not be able to file an appeal in this case because he had entered a plea of guilty?
>
> A.     Absolutely uncategorically [sic] no.  I may have informed Mr. Goyette that because he's entered a plea that his appellate rights may be limited, which is in fact true, but I never told him he couldn't file an appeal, and I believe he was admonished by the Court of his rights as well, if I'm not mistaken.
>
> Q.     Well, do you want to refer to the colloquy and check that?
>
> A.     No.  I mean I'm just saying that I did not say that.

Q.      Would it surprise you to know that the Judge never informed him of his right to appeal during the plea?

A.      I would agree[3] . . .

. . .

Q.      And did you tell Mr. Goyette that he would not be able to challenge the restitution claims on appeal?

A.      I don't recall ever telling him that at all.  What I believe I told Mr. Goyette, as I would tell any client, is if you don't like the deal, don't take it.  If you want to go to trial, I would be more than happy to go to trial and take your case to trial.  We knew that there was going to be substantial restitution owed, he understood that he was looking at sentences that would put him in jail for life, and fines of up to $13 million, I believe, he thought it was a good deal, he wanted it.

"Testimony of Wayne Brocks Barfield Partial Transcript of Evidentiary Hearing Before Hon. Clinton E. Averitte U.S. Magistrate," doc. 89, filed March 28, 2011, [hereinafter Transcript] pgs. 25-27.  The attorney additionally testified that, while an appeal was not part of the original contract he and defendant entered into, he routinely files a Notice of Appeal if a client requests one even if the contract of engagement does not mention such notices.  *Id.*, pgs. 28-29.  The attorney did not recall defendant directing him to file a Notice of Appeal.  *Id.*, pg. 29.

Thus, the issue of whether trial counsel misinformed defendant about his appellate rights comes down to directly contradicting statements between the trial attorney and defendant.  The Court, having observed defendant's demeanor during his testimony and the inconsistencies in his testimony, finds defendant's testimony unpersuasive.  Conversely, the Court accepts as true the testimony of Goyette's trial attorney.  The trial attorney testified that he "never told [defendant] he couldn't file an appeal," and, if anything, informed him of his limited right to appeal.  Transcript,

---

[3]Review of the Rearraignment and Sentencing Transcripts of the criminal trial indicate the Court did not advise defendant of his appellate rights.

pg. 26.  Further, the trial attorney indicated that if Goyette expressed any interest in appealing the

Judgment, he would have filed the Notice of Appeal as matter of course.  The fact that no Notice of

Appeal was filed, in combination with the fact, as testified by his trial attorney, that Goyette was

pleased with the plea agreement, indicates to the Court that no appeal was taken because defendant

received a favorable plea bargain and did not instruct his trial attorney to appeal.

       Further supporting the Court's determination on this issue is defendant's pro se Notice of

Appeal.  On October 19, 2009, defendant filed a late pro se Notice of Appeal.  Attached to that

notice was an "Explanation for Filing Late Motion and Notice of Appeal."  *United States v. Goyette*,

No. 2:09-CR-11, "Notice of Appeal," filed Oct. 19, 2010, doc. #30, pg. 5.  In that explanation,

defendant Goyette offered several reasons the notice of appeal was late, but never stated in that list

of reasons that his attorney misadvised him of his appellate rights.  *Id.*  Rather, defendant states his

Notice of Appeal was late because of his limited access to the law library; disciplinary actions at his

facility of incarceration resulting in loss of communication privileges for twenty days after

sentencing; a transfer in which defendant lost his legal papers; defendant's inability to establish a

commissary account; defendant's trial counsel's failure to mail copies of legal paperwork;[4]

defendant's unfamiliarity with the law; attorney abandonment after sentencing; and "initially trusted

counsel was due diligent in following client's (Goyette) instructions relating to his legal case.  Have

subsequently learned counsel misled both client and the court in actuall [sic] work performed."  *Id.*

Goyette listed eight different reasons as justification for his late notice of appeal.  In that list,

Goyette never mentioned that his trial attorney had misinformed him of his appellate rights or that

---

[4]  Evidence introduced during the evidentiary hearing established defendant's trial attorney did, in fact,
attempt to mail a copy of defendant's case file to defendant in August 2009, but the prison in which defendant was
incarcerated returned the package, indicating it would not deliver the file to defendant.

he was otherwise misled concerning his those rights nor did Goyette claim he had instructed his attorney to file a notice of appeal and his attorney failed to do so.  Critically, defendant Goyette's present contention that his trial attorney misinformed him of his appellate rights or told him he had no right to appeal was not presented to any court until defendant filed this section 2255 motion. While events may have transpired after Goyette arrived at the federal penitentiary and,  by October 2009, wished to appeal the Judgment, there is no credible evidence that Goyette wished to appeal prior to October 2009, or that the delay in filing the notice of appeal was the fault of his trial attorney.

Because the Court finds Goyette's claim he did not learn of his appellate rights until July or August of 2009 is not credible, defendant Goyette has failed to carry his burden of showing by a preponderance of the evidence he received ineffective assistance of counsel.  *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Montoya*, 226 F.3d at 408.  Defendant has not demonstrated his attorney's performance was deficient.  *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2064. Defendant's fifth point of error is without merit and should be denied.[5]

### b.  Failure to Advise Defendant of his Right to Appeal

As stated at page 13, defendant Goyette did not present a separate ground based on the Court's failure to advise him of his right to appeal in his motion to vacate.  He did, however, in his narrative providing the facts to support the  ineffective assistance of counsel claim with respect to

---

[5] In his Reply to the Government's Response to Goyette's Title 28 U.S.C. § 2255 Motion, defendant suggests the District Court is unable to make a fair determination in this case because of its own experience with suffering an "anthrax hoax."  *See United States v. Guevara*, 408 F.3d 252 (5th Cir. 2005); doc. 30, pg. 29.  First, that concern does not apply to this Court, which has determined defendant's 28 U.S.C. § 2255 motion should be denied. Additionally, as it relates to the District Court, defendant's suggestion is wholly unsupported by any evidence whatsoever.  There is no basis even for speculation that the District Court's prior experience with a different person over nine years ago would have any impact at all on the Court's abilities to render a fair judgment in this case.  *See Liteky v. United States*, 510 U.S. 540, 544-45, 114 S.Ct. 1147, 1152 (1994).

his appeal, state that at the end of the sentencing hearing the District Court did not speak of Goyette's right to file an appeal and that he was under the impression filing an appeal was not an option.  Goyette also alleges that if the Court would have mentioned that he had the option of appealing, he would have immediately indicated his intent to file notice.  Goyette continues to contend he only became aware of his right to appeal in late July or early August of 2009.  Review of the transcript of the Sentencing Hearing shows the District Court did not advise defendant of his appellate rights.

It is not clear whether Goyette is now contending the Court's failure to advise him of his right to appeal entitles him to relief, but if he is making such an argument, he is not entitled to relief. First, the motion to vacate *does not* set out as a ground for relief any failure of the District Court to advise Goyette of his right to appeal.  Rather, defendant's ground five only alleges a denial of the effective assistance of counsel pertaining to his appeal.  The failure to set forth, as a separate and independent ground for relief, the failure of the District Court to advise him of his right to appeal, and the discussion of the District Court's failure in that regard <u>only</u> in connection with his ineffective assistance of counsel claim, warrants *not* treating the Court's failure to advise him of his right to appeal as a freestanding claim.  It is, therefore, the opinion and finding of the undersigned that Goyette has not asserted a claim in his section 2255 motion regarding the Court's failure to advise him of his right to appeal.

Even if the Court were to consider the motion to vacate as asserting an independent or separate claim based upon the District Court's failure to advise him of his right to appeal, Goyette would not, under the facts and circumstances of this case, be entitled to relief because the claims he has presented are simply not credible.  This finding is based upon the pleadings in this case and

Goyette's testimony at the evidentiary hearing.

The Court acknowledges its duty to liberally construe the pleadings of a pro se litigant. Liberal construction does not, however, require allowing a pro se litigant to make whatever allegations he finds convenient and then alter or revise those allegations until he stumbles upon a potential claim that might entitle him to relief.  Such a course of action, which appears to be defendant's modus operandi, will not be condoned by this Court.

Goyette's claims that he was unaware of his appellate rights are not credible for several reasons.  In his October 2009 late notice of appeal, defendant provided several reasons in explanation of his failure to timely file a notice of appeal.  Despite defendant's apparent willingness to list out several reasons justifying the delay, defendant never indicates the late notice of appeal was as a result of ignorance of his appellate rights or that such was the result of any failure by the District Court to advise him of his right to appeal.

Further, on December 14, 2009, the Fifth Circuit remanded petitioner's case to the District Court for a determination of whether the District Court should grant an additional thirty days of time in which Goyette could file a notice of appeal based upon a finding of excusable neglect or good cause.  Goyette did not submit anything to the District Court arguing the court should allow the thirty-day extension because he was not advised of his right to appeal.  In fact, Goyette offered nothing to support granting the additional thirty days in which to file his notice of appeal.

It was not until he filed his February 2010, § 2255 motion to vacate that defendant raised the allegation concerning his trial attorney's representations (which is also when he first mentioned the District Court's sentencing admonishments, or lack thereof).  Also in the written pleadings before the Court, upon which pleadings this Court based its decision to appoint counsel for defendant and

conduct an evidentiary hearing, defendant said he would not have pled guilty but for his attorney's allegedly deficient performance regarding restitution.  As discussed above, Goyette dramatically altered his story at the evidentiary hearing, after he learned that his entire guilty plea might be nullified if he were to obtain a favorable determination by the Court.  Goyette's contention that he was unaware of his right to appeal is directly contradicted by his testimony at the evidentiary hearing when he testified he told his trial counsel that he wanted to appeal.

Had Goyette's position remained consistent, a different result might possibly be in order. Unfortunately for Goyette, he has taken too many inconsistent positions before the Court for the Court to accept as true any of Goyette's contentions without support in the form of additional evidence outside of Goyette's statements.  Goyette would have done well to learn from Sir Walter Scott's verse, "O, what a tangled web we weave, [w]hen first we practise to deceive!"  *Marmion*, Canto VI, Stanza 17 (1808).  At this point, the Court is unwilling to rely upon any of Goyette's representations unless they have additional support elsewhere.

With respect to Goyette's discussions with his attorney regarding appeal, what representations his attorney made, whether he ever asked his attorney to file a notice of appeal, whether he was aware of his right to appeal, and the role of the District Court's failure to advise him of his right to appeal, the only evidence in support of Goyette's position are Goyette's ever-changing representations and statements.  Consequently, even if the Court construes Goyette's fifth ground of error to include a claim about the District Court's failure to advise him of his appellate rights, then the undersigned concludes such an argument is meritless because the evidence shows Goyette was otherwise aware of his appellate rights.  Goyette's lack of credibility and the inconsistent positions he has taken with respect to, inter alia, whether he was aware of his appellate rights or not,

prohibit granting him any relief, whether that be an out-of-time appeal or some other relief.

## IV.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge that the Motion to Vacate, Set Aside, and Correct Sentence, filed by defendant RICHARD LEON GOYETTE be DENIED.

## V.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 27th day of January, 2012.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the

unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).